IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-03298-NYW-KLM

OTTER PRODUCTS, LLC,

      Plaintiff,

v.

FLYGRIP, INC.,

      Defendant.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Defendant's **Motion to Dismiss Plaintiff's Complaint** [#16] (the "Motion").  Plaintiff filed a Response [#19] in opposition to the Motion [#16], and Defendant filed a Reply [#34].  The Motion [#16] has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1.  *See* [#58].  The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#16] be **DENIED**.

### I. Background[1]

      This is an action for declaratory judgment that Plaintiff does not infringe U.S. Patent Nos. 8,844,098 (the "'098 Patent"), 10,406,671 (the "'671 Patent"), 10,800,024 (the "'024 Patent"), or 10,953,535 (the "'535 Patent") (collectively, the "Patents-in-Suit"), which have

_____

[1]  For the purposes of resolving the Motion [#16], the Court accepts as true all well-pled, as opposed to conclusory, allegations made in Plaintiff's Complaint [#1].  *See Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007).

been assigned to Defendant.  *Compl.* [#1] ¶ 1.  Plaintiff is a Colorado limited liability company with its principal place of business in Colorado, and at the time the Complaint [#1] was filed, Defendant was a New York corporation with its principal place of business in New York.  *Id.* ¶¶ 2-3.[2]  Defendant sells products within Colorado.  *Id.* ¶ 6.  Defendant's product line appears to include "handheld device grips."  *See id.* ¶¶ 15, 18.

In a letter dated October 12, 2021, Defendant's counsel asserted to Plaintiff that Plaintiff is infringing Defendant's patents.  *Id.* ¶ 13.  The letter identified Defendant as the assignee of all of the Patents-in-Suit and stated:

> [Defendant] is the assignee of United States Patent Nos. 8,844,098; 10,406,671; 10,800,024; and 10,953,535 . . . .
>
> It has come to the attention of [Defendant] that [Plaintiff] is selling . . ., advertising, offering for sale, or importing into the United States handheld device grips that infringe one or more of [Defendant]'s patents . . . .  In particular, and by way of example only, [Plaintiff] offers for sale its line of Otterbox with Popsockets products, and related products that incorporate the pull-out grip design.  I draw your attention to, for example, claim 2 of the '024 patent.  [Plaintiff] may wish to have its patent counsel examine the patents to determine whether it would like to take a non-exclusive license to the patents.
>
> We request that [Plaintiff] advise us whether it is willing to engage with [Defendant] in discussions regarding the amount of renumeration appropriate to remedy [Plaintiff]'s use of the patents.

*Id.* ¶¶ 14-15; *Pl.'s Ex. 8*, *Enforcement Letter from Defendant to Plaintiff* [#1-8] (the "Enforcement Letter") at 5.[3]

---

[2]  Defendant appears to have since re-incorporated in Texas.  *See Flygrip, Inc. v. Walmart Inc.*, No. 6-21-cv-01082-ADA, 2022 WL 2373714, at *8 (W.D. Tex. June 29, 2022).

[3]  To the extent that Plaintiff attaches documents to its Complaint [#1], the Court finds that these attachments can properly be considered under Fed. R. Civ. P. 12(b)(1), (b)(2), and (b)(6) without conversion to a motion for summary judgment.  *See Vaupel v. United States*, No. 07-cv-01443-PAB-KLM, 2011 WL 2144608, at *3 (D. Colo. May 31, 2011) (Rule 12(b)(1)); *Brinkman Constr., Inc. v. Lloyd*, No. 19-cv-03438-CMA-KLM, 2020 WL 9424363, at *5 (D. Colo. June 29, 2020) (citations omitted) (Rule 12(b)(2)); *O'Banion v. Matevousian*, No. 19-cv-02517-WJM-KLM, 2020

Defendant sent a nearly identical letter to a separate Colorado company on October 12, 2021, asserting infringement of Defendant's patents.  *Compl.* [#1] ¶¶ 17-18.  Before sending these two enforcement letters, Defendant engaged in at least forty communications with Colorado entities since 2019.  *See id.* ¶ 24; *Pl.'s Ex. C, Summary of Defendant's Communications* [#19-1] (the "Summary"); *Pl.'s Ex. 13, Notice Letter from Defendant to Plaintiff* [#1-13] (the "Notice Letter"); *Pl.'s Ex. D, Emails Between Michael Karmatz and David Barnett* [#19-2] (the "Emails").[4]

On October 18, 2021, Defendant sued Amazon, Inc. for patent infringement in the United States District Court for the Western District of Texas (the "Amazon Suit"),[5] alleging that Amazon is infringing the '024 Patent in part by selling products made by Plaintiff.  *Compl.* [#1] ¶¶ 19-23.  On the same day, Defendant also sued Walmart, Inc. for patent infringement in the Western District of Texas (the "Walmart Suit"),[6] alleging that Walmart is infringing the '024 and '098 Patents in part by selling products made by Plaintiff.  *Id.* ¶¶ 39-42.

Plaintiff asserts four counts seeking a declaratory judgment that: (1) Plaintiff does not infringe the '098 Patent; (2) Plaintiff does not infringe the '671 Patent; (3) Plaintiff does

---

WL 6119531, at *3 (D. Colo. Aug. 14, 2020) (citing *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010)) (Rule 12(b)(6)).  The Court therefore considers the attachments to the Complaint [#1] for the purposes of adjudicating the Motion [#16].

[4]  When adjudicating motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(2), the Court may consider evidence and documents presented by the parties that are outside the four corners of the complaint.  *See Sys. Application & Techs., Inc. v. United States*, 100 Fed. Cl. 687, 703 (2011), *aff'd*, 691 F.3d 1374 (Fed. Cir. 2012) (subject matter jurisdiction); *Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG*, 933 F.3d 1302, 1309 (Fed. Cir. 2019) (personal jurisdiction).  The Court therefore considers Plaintiff's exhibits for the purposes of resolving the Motion [#16] as it relates to subject matter jurisdiction and personal jurisdiction.

[5]  Case No. 6:21-cv-01081.

[6]  Case No. 6:21-cv-01082.

not infringe the '024 Patent; and (4) Plaintiff does not infringe the '535 Patent. *Id.* ¶¶ 54-85. Plaintiff further seeks attorneys' fees, costs, expenses, and a declaration that this case is "exceptional" under 35 U.S.C § 285. *Id.* at 14. After the Complaint [#1] was filed, Defendant offered Plaintiff a covenant against litigation regarding a limited number of Plaintiff's products. *See Pl.'s Ex. I*, *Emails Between Joel Sayres and Robert Katz* [#19-7] (the "Offered Covenant") at 2.

In the present Motion [#16], Defendant seeks dismissal of the Complaint [#1] based on: (1) lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and 28 U.S.C. § 2201(a), regarding three of the four patents in question; (2) lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2); and (3) failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). *Motion* [#16] at 5, 18. Defendant further requests that the Court decline to exercise its discretionary jurisdiction over the Complaint [#1]. *Id.* at 5. In the event that the Court exercises its discretionary jurisdiction, Defendant requests the Court to stay, dismiss, or transfer this action under the first-to-file rule. *Id.* The Court considers each of Defendant's arguments in turn.

## II. Subject Matter Jurisdiction

### A. Legal Framework

As Defendant points out, "[t]he Declaratory Judgment Act requires that a 'case of actual controversy' exist between the parties before a federal court may exercise jurisdiction." *Motion* [#16] at 18 (citing 28 U.S.C. § 2201(a)). The Supreme Court has clarified that the controversy must be "substantial" and "of sufficient immediacy and reality to warrant" the issuance of a declaratory judgment. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270,

273 (1941)).  "The burden is on the party claiming declaratory judgment jurisdiction . . . to establish that an Article III case or controversy exist[s] . . . ."  *Danisco U.S. Inc. v. Novozymes A/S*, 744 F.3d 1325, 1329 (Fed. Cir. 2014).[7]  "[I]n patent cases, the existence of a case or controversy must be evaluated on a claim-by-claim basis."  *Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1281 (Fed. Cir. 2012) (citation omitted).  While "[a]ll of the circumstances are considered in determining the existence of a case or controversy[,]" the "controversy cannot be based on a fear of litigation over future products."  *Ameranth, Inc. v. Domino's Pizza, LLC*, 792 F. App'x 780, 783 (Fed. Cir. 2019) (citing *MedImmune*, 549 U.S. at 127); *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 855 (Fed. Cir. 1999) (citation omitted).

Where a patentee issues communications related to patent infringement, a controversy may be established even where the patentee refrains from explicitly threatening litigation:

> The purpose of a declaratory judgment action cannot be defeated simply by the stratagem of a correspondence that avoids the magic words such as 'litigation' or 'infringement.'  Of course, if 'a party has actually been charged with infringement of the patent, there is, *necessarily*, a case or controversy adequate to support [declaratory judgment] jurisdiction.'  But it is implausible (especially after *MedImmune* and several post *MedImmune* decisions from this court) to expect that a competent lawyer drafting such correspondence for a patent owner would identify specific claims, present claim charts, and explicitly allege infringement.

*Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009) (alteration in original; internal citations and quotations omitted).

---

[7]  Because the Complaint [#1] exclusively raises claims under federal patent law, the Court applies Federal Circuit authorities with respect to the question of subject matter jurisdiction.  *See Inspired Dev. Grp., LLC v. Inspired Prods. Grp., LLC*, 938 F.3d 1355, 1360 (Fed. Cir. 2019).

In actions where a case or controversy is present, district courts are divested of subject matter jurisdiction where a patentee offers "a covenant not to sue for patent infringement" before a trial begins.  *See Dow Jones & Co., Inc. v. Ablaise Ltd.*, 606 F.3d 1338, 1346 (Fed. Cir. 2010) (citation omitted).  However, "whether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009). To extinguish a case or controversy, a covenant must bar litigation against alleged patent infringers for past, current, and future infringement by allegedly infringing products.  *See Dow Jones*, 606 F.3d at 1347 n.2 (explaining that a covenant did not extinguish a controversy because "[t]he covenant did not preclude future infringement actions should [the plaintiff] recommence sales of the accused infringing device after the dismissal of the action").

## B.    Analysis

Defendant argues that the Court lacks subject matter jurisdiction over the '671, '098, and '535 Patents because Defendant has not asserted these patents against Plaintiff's products in the Amazon and Walmart Suits, and because Defendant's Enforcement Letter [#1-8] to Plaintiff only explicitly references the '024 Patent.  *Motion* [#16] at 19.  Defendant further appears to argue that the Court lacks subject matter jurisdiction because Defendant has offered a covenant barring future litigation against Plaintiff for infringement of the '671, '098, and '535 Patents.  *See Reply* [#34] at 14 (citing *Offered Covenant* [#19-7]).[8]   Plaintiff, on the other hand, argues that Defendant's

---

[8]  The Court rejects Defendant's argument that "[t]here is [n]o [r]easonable [a]pprehension of [i]mminent [s]uit as to the [t]hree [p]atents" as being precluded by the Federal Circuit.  *Reply* [#34] at 13; *see Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1346 (Fed. Cir. 2007) ("Although

Enforcement Letter [#1-8] to Plaintiff establishes a case or controversy, and thus subject matter jurisdiction over all of the Patents-in-Suit. *Response* [#19] at 18. The Court agrees with Plaintiff for the following reasons.

The Federal Circuit has made clear that explicit references to "infringement" or "litigation" are not necessary to establish a case or controversy. *See Hewlett-Packard*, 587 F.3d at 1362. The Federal Circuit has further identified cases or controversies arising from communications less menacing than a formal writing such as that in the present case. For example, in *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1379 (Fed. Cir. 2012), the Federal Circuit stated:

> Here, 3M's complaint alleges facts indicating that Avery effectively charged 3M with infringement of the Heenan patents. According to 3M's complaint, Avery's Chief Intellectual Property Counsel, Sardesai, telephoned 3M's Chief Intellectual Property Counsel, Rhodes, and expressly stated that a specific product . . . 'may infringe' the Heenan patents and that 'licenses are available.' Two days later, Rhodes telephoned Sardesai and responded that 3M had rejected Avery's license offer. During that call, Sardesai responded that Avery had analyzed [3M's product] with regard to the Heenan patents and that Avery would provide 3M with claim charts.
>
> Those communications, if found by the district court, would be sufficient to constitute a case or controversy between 3M and Avery.

Therefore, while Defendant's Enforcement Letter [#1-8] to Plaintiff did not explicitly assert Plaintiff's infringement of the '671, '098, and '535 Patents, the Enforcement Letter's explicit identification of these patents in conjunction with an explicit assertion of Plaintiff's infringement of the '024 Patent is sufficient to establish a "substantial" case or controversy "of sufficient immediacy and reality" for all of the Patents-in-Suit. *MedImmune*, 549 U.S. at 118; *see Compl.* [#1] ¶¶ 14-15; *Enforcement Letter* [#1-8] at 5; *see also ActiveVideo*

---

neither *Super Sack* nor *Amana* has been expressly overruled, both applied the disapproved 'reasonable apprehension of *imminent* suit' test.") (emphasis in original).

*Networks, Inc. v. Trans Video Elecs., Ltd.*, 975 F. Supp. 2d 1083, 1091 (N.D. Cal. 2013) ("So long as there is an actual charge of infringement, . . . that is enough to give rise to a case or controversy, particularly where a specific infringing product is identified by the patentee.") (internal citations omitted).   Thus, the Court finds that Plaintiff has met its burden of demonstrating the existence of a case or controversy, and that the Court has subject matter jurisdiction over all of the Patents-in-Suit.   *See Danisco U.S.*, 744 F.3d at 1329; 28 U.S.C. § 2201(a).

The Court further finds that it has not been divested of subject matter jurisdiction by Defendant's Offered Covenant.   The Offered Covenant states:

> [Defendant] would be inclined to provide a *past* release to [Plaintiff] for the '671, '098, or '535 patents, subject to [Plaintiff] having no involvement in the supply chain for those products . . . .   [Defendant] would not be inclined to provide a covenant not to sue that would apply to future products.

*Offered Covenant* [#19-7] at 2 (emphasis added).

Defendant's Offered Covenant explicitly refrains from barring litigation over Plaintiff's future sale of current products.   *See id.*   In this manner, Defendant's Offered Covenant is nearly identical to the covenant considered by the Federal Circuit in *Revolution Eyewear*, which was deemed insufficient to divest federal courts of subject matter jurisdiction.   *See* 556 F.3d at 1300 ("[B]y retaining that right [to future patent infringement litigation over current products sold after a covenant], Revolution preserved this controversy at a level of 'sufficient immediacy and reality' to allow Aspex to pursue its declaratory judgment counterclaims.").   Therefore, Defendant's "proposed release" is not sufficient to divest the Court of subject matter jurisdiction.   *Reply* [#34] at 14; *see Dow Jones*, 606 F.3d at 1347 n.2.

- 8 -

Accordingly, the Court finds that it has subject matter jurisdiction over all of the Patents-in-Suit, and **recommends** that the Motion [#16] be **denied** as it relates to subject matter jurisdiction.  The Court therefore turns to the issue of personal jurisdiction.

### III.  Personal Jurisdiction

### A.    Legal Framework

"Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long-arm statute permits the assertion of jurisdiction without violating federal due process." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010) (quotation omitted).[9]  Colorado's long-arm statute extends jurisdiction to the full extent of the Constitution. *Goodwin v. Bruggeman Hatch*, No. 16-cv-00751-CMA-KLM, 2018 WL 2196057, at *3 (D. Colo. May 14, 2018).  In the Motion [#16], Defendant does not contest the authority of Colorado's long-arm statute, but only whether the exercise of jurisdiction comports with due process.

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).  Under the due process clause, the party must have sufficient "minimum contacts" with the state, so that the exercise of jurisdiction over him would not violate "traditional notions of fair play and substantial justice." *Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

---

[9] Because the Complaint [#1] exclusively raises claims under federal patent law, the Court applies Federal Circuit authorities with respect to the question of personal jurisdiction. *See Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003) ("Our prior decisions make clear that where the personal jurisdictional inquiry is intimately involved with the substance of patent laws, we apply Federal Circuit law.") (citation and internal quotations omitted).

The "minimum contacts" test may be established by general jurisdiction or specific jurisdiction.  *Otter Prods., LLC v. Phone Rehab, LLC*, No. 19-cv-00206-RM-MEH, 2019 WL 4736462, at *4 (D. Colo. Sept. 27, 2019).  Here, because Plaintiff only argues that specific personal jurisdiction exists, the Court does not address the issue of general personal jurisdiction.  *See Response* [#19] at 2-10.

The Federal Circuit considers three factors when evaluating specific personal jurisdiction: (1) "whether the defendant purposefully directed its activities at residents of the forum"; (2) "whether the claim arise[s] out of or relate[s] to the defendant's activities within the forum"; and (3) "whether assertion of personal jurisdiction is reasonable and fair."  *Apple Inc. v. Zipit Wireless, Inc.*, 30 F.4th 1368, 1375 (Fed. Cir. 2022) (brackets in original; internal citations and quotations omitted).  "The plaintiff bears the burden of affirmatively establishing the first two elements of the due process requirement[,]" but on doing so, "the burden shifts to the defendant to prove that personal jurisdiction is unreasonable."  *Celgard, LLC v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015).  In the patent context, the first two elements are satisfied where a defendant sends a singular cease and desist letter to the forum.  *New World Int'l, Inc. v. Ford Glob. Techs., LLC*, 859 F.3d 1032, 1037 (Fed. Cir. 2017) ("This court has acknowledged that the defendant purposefully directs his activities at residents of the forum when the defendant sends *a* cease and desist letter to a potential plaintiff in that particular forum.  And a subsequent declaratory judgment action by that potential plaintiff 'arises out of or relates to' the defendant's activity—namely, the cease and desist letter.") (emphasis added); *see also Jack Henry & Assocs., Inc. v. Plano Encryption Techs. LLC*, 910 F.3d 1199, 1204 (Fed. Cir. 2018) (same).

"Where the district court's disposition as to personal jurisdiction is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only make a prima facie showing that defendants are subject to personal jurisdiction." *Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG*, 933 F.3d 1302, 1309 (Fed. Cir. 2019). The Court considers each of the Federal Circuit's three personal jurisdiction factors in turn as they relate to Defendant.

**B.    Analysis**

**1.    (1) Purposefully Directed and (2) Arises Out of Or Relates To**

Defendant appears to argue that its conduct was not purposefully directed at Colorado because its "enforcement activities outside of Colorado cannot be used for the personal jurisdiction analysis[,]" and "[s]elling products or attempting to sell patents in the forum are [sic] not relevant to the specific jurisdiction analysis." *Motion* [#16] at 8-9. Defendant further argues that its "enforcement letters are not sufficient to establish personal jurisdiction" because it only sent two letters into Colorado. *Id.* at 8. In contrast, Plaintiff argues that Defendant has minimum contacts with Colorado because Defendant sold its own patented products in Colorado, attempted to "extract a license from multiple Colorado companies[,]" and sent two enforcement letters and over forty other communications into Colorado. *Response* [#19] at 2-6. The Court agrees with Plaintiff for the following reasons.

The Court finds that Federal Circuit precedent does not require a minimum number of communications for the purpose of establishing minimum contacts. Defendant cites *Red Wing Shoe Company, Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998), for the proposition that three communications is not sufficient to establish

minimum contacts. *Motion* [#16] at 8-9. The Court notes that *New World International, Inc. v. Ford Global Technologies, LLC*, 859 F.3d 1032 (Fed. Cir. 2017), a case decided by the Federal Circuit nineteen years after *Red Wing*, explicitly stated that a *singular* cease and desist letter is sufficient to establish minimum contacts with a forum state. *New World*, 859 F.3d at 1037; *see also Jack Henry & Assocs.*, 910 F.3d at 1204. The Court further notes that *Red Wing* itself found cease and desist letters can be sufficient evidence of minimum contacts. 148 F.3d 1355 at 1360 (stating that while "cease-and-desist letters alone are often substantially related to the cause of action (thus providing minimum contacts)," personal jurisdiction also considers reasonableness).

Defendant appears to attempt to distinguish *New World* by disputing whether Defendant's two enforcement letters were cease and desist letters, stating that "letters or communications involving the sale of patents are not relevant to the specific jurisdiction analysis." *See Reply* [#34] at 2-3. The Court rejects this argument on the basis of recent decisions by the Federal Circuit. *See Apple*, 30 F.4th at 1375-76 (finding that two "notice letters" and two trips to the forum state to discuss allegations of infringement and the prospect of licensing or purchasing patents is sufficient to establish minimum contacts); *Xilinx, Inc. v. Pabst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1354 (Fed. Cir. 2017) (same).[10] Here, Defendant's two letters sent to Colorado were substantively identical to those in *Apple* and *Xilinx* because Defendant's letters alleged infringing conduct and offered to discuss patent licensing. *See Compl.* [#1] ¶¶ 15, 18; *Enforcement Letter* [#1-8] at 5; *Apple*, 30 F.4th at 1375-76; *Xilinx*, 848 F.3d at 1354. Furthermore, while

---

[10]  While the Complaint [#1] does not make allegations of Defendant travelling to Colorado, *see generally Compl.* [#1], a defendant's travel to the forum state is not a prerequisite of minimum contacts, *see New World*, 859 F.3d at 1037; *see also Jack Henry & Assocs.*, 910 F.3d at 1204.

Defendant claims that it should be given "latitude" for giving notice of its patent rights, *Motion* [#16] at 10-11 (citing *Red Wing*, 148 F.3d at 1361), "the Supreme Court cases following *Red Wing* have made clear that the analysis of personal jurisdiction cannot rest on special patent policies[,]" *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1154 (Fed. Cir. 2021).

Accordingly, the Court finds that Defendant has minimum contacts with Colorado and turns to the Federal Circuit's third factor regarding specific personal jurisdiction, i.e., whether exercising personal jurisdiction over Defendant would be "reasonable and fair." *Apple*, 30 F.4th at 1375.

### 2.   (3) Reasonable and Fair

When considering whether the exercise of personal jurisdiction is reasonable and fair, the Federal Circuit applies five factors outlined by the Supreme Court:

> (1) 'the burden on the defendant[ ]'[;] (2) 'the forum State's interest in adjudicating the dispute[ ]'[;] (3) 'the plaintiff's interest in obtaining convenient and effective relief[ ]'[;] (4) 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies[ ]'[;] and (5) the 'shared interest of the several States in furthering fundamental substantive social policies.'

*Trimble*, 997 F.3d at 1153 (quoting *Burger King*, 471 U.S. at 477).

In applying these factors, the Federal Circuit "has held that it is improper to predicate personal jurisdiction on the act of sending ordinary cease and desist letters into a forum, without more." *New World*, 859 F.3d at 1037-38. In fact, the Federal Circuit has reaffirmed *Red Wing*'s logic that three communications alone are insufficient to establish specific personal jurisdiction beyond minimum contacts. *See Trimble*, 997 F.3d at 1156 ("*Red Wing* remains correctly decided with respect to the limited number of communications involved in that case."). The Federal Circuit reached this conclusion by

applying "the Supreme Court's recent instruction to treat 'isolated or sporadic [contacts] differently from continuous ones[.]'"  *Id.* (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1028 n.4 (2021)).  Therefore, the Court considers whether Defendant has contacts with Colorado beyond the two enforcement letters.

Plaintiff argues that Defendant has further contacts with Colorado based on Defendant's sales in Colorado and communications outside of the two enforcement letters discussed above.  *Response* [#19] at 4-5.  In contrast, Defendant argues that its sales in Colorado may not be considered for the purposes of personal jurisdiction because "the contacts material to the specific jurisdiction analysis in a declaratory judgment action are not just any activities related to the patent-at-issue.  Rather, the relevant activities are those that the defendant 'purposefully directs . . . at the forum which relate in some material way to the enforcement of the defense of the patent.'"  *Reply* [#34] at 6 (alteration in original) (quoting *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012 (Fed. Cir. 2009)).  However, as Plaintiff points out, the Federal Circuit has expanded its analysis to a "broad set of defendant's contacts with a forum . . . ."  *Response* [#19] at 5; *see Trimble*, 997 F.3d at 1156 (quoting *Ford*, 141 S. Ct. at 1025).  Furthermore, the Federal Circuit has explained that "the analysis of personal jurisdiction cannot rest on special patent policies," meaning that patent law "is governed by the same . . . procedural rules as other areas of civil litigation."  *Trimble*, 997 F.3d at 1154 (quoting *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954, 964 (2017)).  Therefore, the Court finds that Defendant's Colorado sales *do* constitute contacts relevant to personal jurisdiction.  *Cf. Ford*, 141 S. Ct. at 1028 (finding that, in a case unrelated to patent law, sales in forum states support the exercise of personal jurisdiction).

Defendant further contests Plaintiff's arguments that Defendant's communications, outside of the two enforcement letters discussed above, constitute contacts with Colorado for the purposes of specific personal jurisdiction. *See Response* [#19] at 4-5; *Reply* [#34] at 6-8. In the Response [#19], Plaintiff cites a number of written records showing over forty communications sent into Colorado by Defendant before its two enforcement letters. *Response* [#19] at 5 (citing *Compl.* [#1] ¶ 24; *Summary* [#19-1]; *Emails* [#19-2]; *Notice Letter* [#1-13]).[11] Defendant argues that these communications are irrelevant to the present case because Defendant did not initiate the communications, and the communications terminated in 2020. *Reply* [#34] at 7-8. The Court finds that Defendant's arguments have been precluded by the Federal Circuit:

> Finally, Zipit suggests in its appeal brief that it could not have foreseen being haled into court in California because four years lapsed between its last contact with Apple in California (2016) and Apple's filing of its declaratory judgment action (2020). . . . But Zipit's argument skips over an important point—it is Zipit who reignited the parties' contacts by filing suit for patent infringement in Georgia in 2020. After moving to dismiss its action in Georgia without prejudice, Zipit cannot credibly assert that it could not have reasonably foreseen that Apple would respond in kind by filing a declaratory judgment claim, and that it would do so in its home state of California given Zipit's earlier contacts with the forum state. However stale Zipit's contacts might have become absent intervening action by Zipit, they were ripe when Apple filed its declaratory judgment action.

*Apple*, 30 F.4th at 1380 (internal citations omitted).

Here, the time elapsed between Defendant's communications into Colorado and the present litigation is almost a quarter of that in *Apple*. *Compare Compl.* [#1] (filed on

---

[11] Defendant argues that the Court should reject Plaintiff's evidence because it is "outside of the pleadings, unsupported by affidavit, and [Plaintiff] has not established the material as competent evidence." *Reply* [#34]. The Court applies Plaintiff's evidence to the personal jurisdiction analysis because the evidence is properly submitted written material. *See LABOKLIN*, 933 F.3d at 1309 (stating that affidavits *or* written materials may be considered for the purposes of personal jurisdiction).

December 1, 2021) *with Reply* [#34] (stating that communications terminated in 2020). Furthermore, while Plaintiff is not a party to the Amazon or Walmart Suits, *see Compl.* ¶¶ 19, 39, Defendant's allegations in those suits specifically identify Plaintiff's products as infringing the '024 Patent—the same patent identified in Defendant's Enforcement Letter to Plaintiff, *see id.* ¶¶ 15, 20-23, 40-42; *Enforcement Letter* [#1-8] at 5.  Therefore, the Court finds the litigation initiated by Defendant in the Western District of Texas revived the relevance of Defendant's previous communications into Colorado as they relate to personal jurisdiction. *See Apple*, 30 F.4th at 1380.  Thus, the Court finds that Defendant's contacts with Colorado rest on more than two enforcement letters, and do not preclude the exercise of personal jurisdiction over Defendant.  *See New World*, 859 F.3d at 1037-38.

Accordingly, the Court turns to the Supreme Court's factors regarding reasonableness and fairness to determine whether it is appropriate to exercise personal jurisdiction over Defendant.  *Reply* [#34] at 3; *see Celgard*, 792 F.3d at 1378.[12]

### a.   The Burden on Defendant

In light of Defendant's decision to assume the burden of litigating in Waco, Texas, *Compl.* [#1] ¶¶ 19, 39, which is approximately the same distance as Colorado from Defendant's home state of New York, *id.* ¶ 3, the Court cannot find that Defendant would be significantly burdened by litigation in this District, *see Juniper Networks Inc. v. Swarm Tech. LLC*, No. 3:20-cv-03137-JD, 2021 WL 6049924, at *3 (N.D. Cal. Dec. 21, 2021) ("In

---

[12]   The Court notes that Defendant's only arguments regarding reasonableness and fairness relate to Defendant's lack of contacts with Colorado, and the proposition that a patentee should be able to "inform others of its rights without subjecting itself to jurisdiction in a foreign forum." *Motion* [#16] at 11-12 (quoting *Red Wing*, 148 F.3d at 1360-61).  The Court rejected these arguments in Section III.B.1., *supra*.

this time of remote access court hearings and electronic discovery, it is hardly an undue burden on [a defendant] to litigate a case in the District.") (citing *Breckenridge Pharm., Inc. v. Metabolite Lab'ys, Inc.*, 444 F.3d 1356, 1367 (Fed. Cir. 2006)).

Accordingly, the Court finds this factor to weigh in favor of exercising personal jurisdiction over Defendant.

### b.    The Forum State's Interest

Plaintiff argues that Colorado has a "significant interest in adjudicating this dispute" because Plaintiff is located in Colorado, and Defendant has made infringement allegations against multiple Colorado residents. *Response* [#19] at 8-9. Because Defendant makes no contrary arguments, the Court finds that Defendant concedes this point. *Cf. Rodriguez v. Dep't of Veteran Affs.*, 8 F.4th 1290, 1296 (Fed. Cir. 2021) ("Because issues not addressed in the argument section of a party's opening brief are considered waived, . . . we will address only the issues . . . presented in the argument section of [the] brief.") (internal citations omitted); *see generally Motion* [#16]; *Reply* [#34].

Accordingly, the Court finds this factor to weigh in favor of exercising personal jurisdiction over Defendant.

### c.    Plaintiff's Interest

Plaintiff argues that it "indisputably has an interest in protecting itself from patent infringement by obtaining relief 'from a nearby federal court' in its home forum." *Response* [#19] at 9 (quoting *Xilinx*, 848 F.3d at 1355). Because Defendant makes no contrary arguments, the Court finds that Defendant concedes this point. *Cf. Rodriguez*, 8 F.4th at 1296; *see generally Motion* [#16]; *Reply* [#34].

Accordingly, the Court finds this factor to weigh in favor of exercising personal jurisdiction over Defendant.

### d.    The Judicial System's Interest

Plaintiff argues that Colorado, as a forum "with a logical connection to the dispute," "provides the most efficient resolution due to the convenience to [Plaintiff] and the lack of any additional burden on [Defendant] to litigate in Colorado instead of Texas." *Response* [#19] at 9.   While Defendant does not explicitly make the argument in the context of personal jurisdiction, it appears to argue that Texas would provide a more efficient resolution because the Amazon and Walmart Suits "would also resolve more issues." *See Motion* [#16] at 10-11.   The Court rejects Defendant's argument on the basis of a recent decision by the Western District of Texas.

The Western District of Texas has recently stayed the Walmart Suit pending the resolution of the present litigation before this Court.   *Flygrip, Inc. v. Walmart Inc.*, No. 6-21-cv-01082-ADA, 2022 WL 2373714, at *9 (W.D. Tex. June 29, 2022).   In its decision, the Western District of Texas indicated that it may have further stayed the Amazon Suit had a co-defendant agreed to be bound by the present litigation before this Court.   *See id.* at *3 n.1.   Given this procedural development, the Court finds that "the interstate judicial system's interest in obtaining the most efficient resolution of controversies" supports resolution of the present litigation, which would require the exercise of personal jurisdiction over Defendant.   *See Trimble*, 997 F.3d at 1153.

Accordingly, the Court finds this factor to weigh in favor of exercising personal jurisdiction over Defendant.

### e.    The Interest of the States

Plaintiff argues that "[t]here is no conflict between the interests of Colorado or any other state, because 'the same body of federal patent law would govern the patent noninfringement claim irrespective of the forum.'"  *Response* [#19] at 9 (quoting *Trimble*, 997 F.3d at 1159).  Because Defendant makes no contrary arguments, the Court finds that Defendant concedes this point.  *Cf. Rodriguez*, 8 F.4th at 1296; *see generally Motion* [#16]; *Reply* [#34].

Accordingly, the Court finds this factor to weigh in favor of exercising personal jurisdiction over Defendant.

## f.      Balancing the Factors

Based on the foregoing, the Court finds that each of the Supreme Court's five factors determining whether exercising personal jurisdiction is reasonable and fair weigh in favor of exercising personal jurisdiction over Defendant, and that Defendant has not met its burden of proving that the exercise of personal jurisdiction would be unreasonable. *See Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1363 (Fed. Cir. 2001) ("[C]ases where a defendant may defeat otherwise constitutional personal jurisdiction should be 'limited to the rare situation in which the plaintiff's interest and that state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.'") (citation omitted); *Trimble*, 997 F.3d at 1153; *Celgard*, 792 F.3d at 1378.

In sum, the Court finds that Defendant has minimum contacts with Colorado, and that exercising personal jurisdiction would be reasonable and fair, satisfying the Federal Circuit's test for personal jurisdiction.  *See Apple*, 30 F.4th at 1375.  Accordingly, the Court **recommends** that the Motion [#16] be **denied** as it relates to personal jurisdiction.

The Court therefore turns to whether its discretionary jurisdiction over a declaratory judgment action should be exercised.

### IV.  Discretionary Jurisdiction Over Declaratory Judgment

**A.    Legal Framework**

The Supreme Court has made clear that the exercise of jurisdiction over a declaratory judgment action is at the "sound discretion" of district courts:

> [T]here is . . . nothing automatic or obligatory about the assumption of jurisdiction by a federal court to hear a declaratory judgment action. . . .  By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty to grant a new form of relief to qualifying litigants.  Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or dismiss an action seeking a declaratory judgment before trial . . . .

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) (internal citations and quotations omitted).

The parties appear to agree that the Tenth Circuit's five factor test "for evaluating whether a district court should exercise its discretionary jurisdiction over a declaratory judgment action" apply in the patent context.  *See Motion* [#16] at 13 (quoting *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169 (10th Cir. 1995)); *Response* [#19] at 11-12 (applying the *St. Paul Fire* factors).  These factors are:

> (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether use of a declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to *res judicata*'; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*St. Paul Fire*, 53 F.3d at 1169 (quoting *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)).

These factors are "fact intensive and highly discretionary . . . ." *Mhoon*, 31 F.3d at 983. When considering whether to exercise jurisdiction over a declaratory judgment action, courts "must determine whether hearing the case would 'serve the objectives for which the Declaratory Judgment Act was created.' . . . [W]hen these objectives are served, dismissal is rarely proper . . . ." *Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004) (internal citation omitted). The objective of the Declaratory Judgment "Act is to enable resolution of active disputes." *Id.* at 1357. "[T]he discretion to decline declaratory judgment jurisdiction is not unlimited." *Warsaw Orthopedic, Inc. v. Sasso*, 977 F.3d 1224, 1231 (Fed. Cir. 2020). The Federal Circuit has held that it is "an abuse of discretion to dismiss a declaratory action challenging patent validity, when the dismissal le[aves] the accused infringer 'unable to resolve its accused liability for patent infringement.'" *Id.* (citation omitted).

**B.    Analysis**

    **1.    Whether the Court May Consider the Amazon and Walmart Suits**

Defendant argues that the Amazon and Walmart Suits "should not be part of the Court's analysis because (1) [Defendant]'s actions were not directed at this forum, and (2) there is no record evidence that [Plaintiff] is required to indemnify the retailers at issue in the [Amazon and Walmart] suits." *Motion* [#16] at 13-14. Defendant cites *Microchip Tech. Inc. v. Chamberlain Grp., Inc.*, 441 F.3d 936, 943 (Fed. Cir. 2006) to support its argument that the Court should not consider the Amazon and Walmart Suits in its analysis of whether to exercise discretionary jurisdiction. *Motion* [#16] at 13-14; *Reply* [#34] at 10-

11.  Plaintiff, on the other hand, argues that whether the Amazon and Walmart Suits were directed at Colorado is only relevant to personal jurisdiction.  *Response* [#19] at 11. Plaintiff further appears to argue that there need not be any evidence that Plaintiff is required to indemnify the defendants in the Amazon and Walmart Suits, thereby distinguishing *Microchip*.  *See id.*

The Court agrees with Plaintiff on the grounds that Defendant's arguments are irrelevant to the analysis of discretionary jurisdiction.  With regards to Defendant's arguments that the Amazon and Walmart suits were not directed at Colorado, the Court is unaware of any legal authority requiring a "directed at" analysis for the purposes of discretionary jurisdiction.[13]  The Court rejects Defendant's remaining arguments as being relevant to subject matter jurisdiction rather than discretionary jurisdiction.  As Defendant states, "*Microchips* [sic] was fully litigated at the district court, but on appeal was remanded back to it for dismissal for lack of jurisdiction."  *Motion* [#16] at 13-14.  *Microchip* was decided on the grounds that "there must be an actual controversy to sustain declaratory jurisdiction on the merits."  441 F.3d at 944.  In other words, *Microchip* held that the district court lacked *subject matter jurisdiction*, not that the district court abused its *discretion* in exercising declaratory jurisdiction.  *See id.*  Here, whether Plaintiff is required to indemnify the defendants in the Amazon and Walmart Suits is relevant to subject matter jurisdiction, discussed in Section III.B., *supra*, and not the Court's discretionary authority.  Therefore, the Court finds that Defendant has not identified any applicable legal basis to disregard the Amazon and Walmart Suits in the context of

---

[13]  Defendant cites only *Microchip* in support of this argument.  *See Motion* [#16] at 13-14; *Reply* [#34] at 10-11.  In the Court's reading of *Microchip*, the Federal Circuit does not appear to provide any discussion regarding the direction of defendants' conduct.  *See generally Microchip*, 441 F.3d 936.

discretionary jurisdiction, and thus the Court considers the Amazon and Walmart Suits in its discretionary jurisdiction analysis.

### 2.     The *St. Paul Fire* Factors

The Court considers whether the exercise of jurisdiction over the present declaratory action is appropriate by evaluating each of the *St. Paul Fire* factors in turn.

### a.     Whether the Action Would Settle the Controversy

Defendant argues that "[u]nder the *St. Paul Fire* . . . factors one, two, and three, because the [Amazon and Walmart] lawsuits involve other products in addition to the Otter products, this declaratory judgment action would not settle the full scope of the controversies in the [Amazon and Walmart] lawsuits." *Motion* [#16] at 14.  Defendant further argues that "the [Amazon and Walmart] lawsuits would also resolve more issues" because those suits will implicate the validity of patents that have not been asserted in the present action.  *Id.* at 14-15.  Plaintiff argues that the correct test "is whether a declaratory action would settle the controversy in *this* case, not in the declaratory defendant's other cases or potential cases."  *Response* [#19] at 12 (emphasis added) (citing *Owners Ins. Co. v. Keeton*, 20-cv-02950-KLM, 2021 WL 5998526, at *5 (D. Colo. Dec. 20, 2021)).

In *Keeton*, the Court did not address the effects of parallel litigation as Plaintiff suggests.  *See generally* 2021 WL 5998526.  Rather, the Court stated that "the absence of underlying litigation" did not weigh against exercising discretionary jurisdiction.  *See id.* at *5.  In fact, as Defendant points out, the Tenth Circuit has expressed disapproval of declaratory judgments that settle controversies in a "piecemeal approach."  *See United States v. City of Las Cruces*, 289 F.3d 1170, 1187 (10th Cir. 2002) (noting the "desirability

of avoiding piecemeal adjudication") (citation omitted).  However, in *City of Las Cruces*, the Tenth Circuit considered a controversy over water rights with "thousands of water users" that could have asserted legal claims.  *Id.*  The present case is distinct in that the number of parties with interests in the issues both before the Court and in the Amazon and Walmart Suits may be counted on two hands.  *See Motion* [#16] at 10 n.2 (identifying five manufacturers of products at issue in the Amazon and Walmart Suits); *see generally Compl.* [#1] (one plaintiff and one defendant).  Therefore, while the present case may not resolve *every* controversy in the Amazon and Walmart Suits, it would resolve a substantial portion of the controversies in the Amazon and Walmart Suits.

However, based on the Tenth Circuit's expressed desire to avoid "piecemeal adjudication," the Court finds that this factor weighs slightly against the exercise of discretionary jurisdiction.

### b.    Whether the Action Would Clarify Legal Relations

The Court may address the second *St. Paul Fire* factor, i.e., whether declaratory judgment "would serve a useful purpose in clarifying the legal relations at issue[,]" 53 F.3d at 1169, under the same analysis as the first factor, *see Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 982 (10th Cir. 2012) (affirming a district court that considered the first two *St. Paul Fire* factors together).  Thus, based on the "desirability of avoiding piecemeal adjudication[,]" the Court finds that this factor weighs slightly against the exercise of discretionary jurisdiction.  *See City of Las Cruces*, 289 F.3d at 1187.

### c.    Whether the Action is "Procedural Fencing"

Defendant argues that the third *St. Paul Fire* factor, i.e., "whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata*[,]" 53 F.3d at 1169, weighs against discretionary jurisdiction because Plaintiff "appears to be using this declaratory judgment action as a race to *res judicata* as to the single issue of infringement involving its products[,]" *Motion* [#16] at 15. Plaintiff counters that it "is simply trying to resolve once and for all whether its products infringe [Defendant]'s patents in a venue with a logical connection to the dispute, rather than have [Defendant] forum shop and sue [Plaintiff]'s customers in whatever venue nationwide it considers most advantageous." *Response* [#19] at 12.

The Court accepts Plaintiff's logical explanation for its pursuit of declaratory judgment in this District. *See Mid-Continent*, 685 F.3d at 984-85 (affirming a district court's conclusion that adequate explanations for alleged instances of procedural fencing precluded the third *St. Paul Fire* factor from favoring any party). Because a logical explanation for Plaintiff's choice of venue exists, the Court cannot find that Plaintiff attempted to engage in procedural fencing. *See Nautilus Ins. Co. v. Tierra Blanca Ranch*, No. 14-cv-988 MCA/SMV, 2015 WL 11643517, at *5 (D.N.M. Sept. 29, 2015) ("There is much courts do not know, particularly courts not involved in the underlying litigation, about the strategy of attorneys and the timing of certain filings. That said, . . . this Court cannot say it was procedural fencing . . . to file there."); *cf. Safeco Ins. Co. of Am. v. Brindeiro*, No. 19-962 JAP/GBW, 2020 WL 2467742, at *5 (D.N.M May 13, 2020) ("Absent more concrete indication that Plaintiff was manipulating the timing of its filing, the Court will not find that Plaintiff engaged in procedural fencing. Accordingly, this factor does not support or weigh against federal court jurisdiction.").

Accordingly, the Court finds this factor to be neutral.  *See Mid-Continent*, 685 F.3d at 984-85.

### d.      Whether the Action Would Encroach On State Jurisdiction

Neither party has identified any involvement of state courts in the present dispute. Accordingly, the Court finds that the fourth *St. Paul Fire* factor weighs in favor of the exercise of discretionary jurisdiction.   *See* 53 F.3d at 1169 ("[W]hether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction . . . .").

### e.      Whether an Alternative Remedy Is More Effective

Defendant argues that the fifth *St. Paul Fire* factor, i.e., "whether there is an alternative remedy which is better or more effective[,]" 53 F.3d at 1169, weighs against the exercise of discretionary jurisdiction because Plaintiff "can simply intervene in the [Amazon and Walmart] lawsuits[,]" *Motion* [#16] at 15.  Plaintiff, in contrast, appears to argue that intervention is an insufficient alternative remedy because Plaintiff "is not a party to the [Amazon and Walmart] cases, and [Defendant] cites no authority that [Plaintiff] must intervene in a forum to which it has no connection."   *See Response* [#19] at 12.  The Court agrees with Plaintiff for the following reasons.

The Court first notes that Defendant does not explain the grounds on which Plaintiff may be able to intervene in the Amazon and Walmart Suits.  *See Motion* [#16] at 15.  It is possible that Plaintiff may be able to intervene in these cases, but the Court would need to make several assumptions to draw such a conclusion.  The Court would need to assume that Plaintiff can intervene as a matter of right or that Plaintiff "has a claim or defense that shares with the main action a common question of law or fact."  *See* Fed. R.

Civ. P. 24(a) and (b)(1)(B).  The Court may further need to assume that Plaintiff has Article III standing to intervene in the Amazon and Walmart Suits.  *See Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1648 (2017) ("[A]n intervenor must meet the requirements of Article III if the intervenor wishes to pursue relief not requested by a plaintiff.").  The Court declines to make such assumptions in the absence of more detailed briefing.[14]  The Court notes instead that the District of Colorado has equal authority as the Western District of Texas to adjudicate patent disputes.  *Cf.* 28 U.S.C. § 1338 ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . .  No State court shall have jurisdiction over any claim . . . arising under any Act . . . relating to patents . . . .").[15]

Thus, the Court does not find that Plaintiff's intervention in the Amazon and Walmart Suits would serve as a "better or more effective" alternative remedy.  *See St. Paul Fire*, 53 F.3d at 1169.  Accordingly, the Court finds that this factor weighs in favor of the exercise of discretionary jurisdiction.

### f.      Balancing the Factors

---

[14]  If Plaintiff *is* able to satisfy the requirements to attempt to intervene, the Court further doubts whether Plaintiff retains the capability to do so by filing a "timely motion."  *See* Fed. R. Civ. P. 24(a)(1) and (b)(1).  The Amazon and Walmart suits were both initiated approximately almost one year ago—a significant period of time that has been found to render motions to intervene untimely in this District—and a *Markman* hearing has already been held in the Amazon Suit.  *See Compl.* ¶¶ 19, 39 (both the Amazon and Walmart Suits were filed on October 18, 2021; *Werner Invs., LLC v. Am. Fam. Mut. Ins. Co.*, No. 11-cv-01884, 2013 WL 2903400, at *2 (D. Colo. June 14, 2013) ("Edge has known of its interest in this case at least since Werner contracted with it on April 24, 2012—*i.e.*, more than one year ago.") (emphasis in original); *Flygrip, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-01081-ADA, 2022 WL 2346624, at *7 (W.D. Tex. June 28, 2022) (*Markman* hearing scheduled to be held on July 6, 2022).

[15]  Because the Amazon and Walmart Suits were filed on October 18, 2021, the Western District of Texas has not had the opportunity to become significantly more oriented with the details of the Patents-in-Suit than this District, where the present action was filed on December 8, 2021.  *See Compl.* [#1] ¶¶ 19, 39.

In sum, the Court finds that: (1) two of the *St. Paul Fire* factors weigh slightly against the exercise of discretionary jurisdiction; (2) two factors weigh in favor of the exercise of discretionary jurisdiction; and (3) one factor is neutral.  The Court therefore finds that the balance of the *St. Paul Fire* factors weighs in favor of the exercise of discretionary jurisdiction, and thus, the Court finds that the exercise of discretionary jurisdiction is warranted, and **recommends** that the Motion [#16] be **denied** as it relates to discretionary jurisdiction.  *See Capo*, 387 F.3d at 1355 (stating that when the objectives of the Declaratory Judgment Act are served, "dismissal is rarely proper").  The Court therefore considers whether the present case should be stayed, dismissed, or transferred pursuant to the first-to-file rule.

## V.  The First-to-File Rule

### A.   Legal Framework

The Federal Circuit has provided the following explanation of the first-to-file rule:

> When two actions that sufficiently overlap are filed in different federal district courts, one for infringement and the other for declaratory relief, the declaratory judgment action, if filed later, generally is to be stayed, dismissed, or transferred to the forum of the infringement action. . . . This 'first-to-file' rule exists to 'avoid conflicting decisions and promote judicial efficiency.' . . . But the rule is not absolute; exceptions may be made if justified by 'considerations of judicial and litigant economy, and the just and effective disposition of disputes.' . . . Resolution of whether the second-filed action should proceed presents a question sufficiently tied to patent law that the question is governed by this circuit's law. . . .  Application of the first-to-file rule is generally a matter for a district court's discretion, exercised within governing legal constraints.

*Futurewei Techs., Inc. v. Acacia Rsch. Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013) (internal citations omitted).

"In patent actions, courts have recognized two exceptions to the first-filed rule.  The first exception is the customer suit action.  The second exception is where forum shopping

alone motivated the choice of sites for the first suit." *Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*, 676 F. Supp. 2d 321, 327 (D. Del. 2009) (citing *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989).  The Court considers whether either of these exceptions apply to the present case.

## B.     The Customer Suit Exception

The Chief Judge of this District has explained the customer suit exception as follows:

> The "customer-suit exception" is an exception to the first-to-file rule which favors the litigation of the subsequent case where the first suit filed is a direct infringement case against a customer who is a reseller of the accused goods and the second suit is a declaratory action brought by the manufacturer of the accused goods.

*Two Moms & a Toy, LLC v. Int'l Playthings, LLC*, No. 10-cv-02271-PAB-BNB, 2011 WL 5593178, at *4 (D. Colo. Nov. 17, 2011) (citation omitted).

"When a patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an action of noninfringement of patent invalidity, the suit by the manufacturer generally take[s] precedence." *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014) (citations omitted).  The customer suit exception exists because "it is the manufacturer who is generally the 'true defendant' in the dispute." *See id.* (citation omitted).  Courts consider three factors when evaluating the applicability of the customer suit exception: "(1) whether the [c]ustomers are merely resellers; (2) whether the [c]ustomers agree to be bound by any decision in the [m]anufacturer's case; and (3) whether the [m]anufacturer is the sole source of infringing products." *Pragmatus Telecom, LLC v. Advanced Store Co., Inc.*, No. 12-088-RGA, 2012 WL 2803695, at *3

(D. Del. 2012) (citing *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 485 F.3d 1335, 1343 (Fed. Cir. 2006)).[16]  The Court considers each of these factors in turn.

### 1.     Whether the Customers Are Merely Resellers

Plaintiff states that Defendant "does not contend that Amazon and Walmart are anything more than mere resellers, as opposed to manufacturers."  *Response* [#19] at 13.  The Court agrees with Plaintiff.  *See generally Motion* [#16]; *Reply* [#34].  Because Defendant makes no contrary arguments, the Court finds that Defendant concedes this point.  *Cf. Rodriguez*, 8 F.4th at 1296.

Accordingly, the Court finds that this factor weighs in favor of the application of the customer suit exception.

### 2.     Whether the Customers Agree to Be Bound

Defendant argues that "[t]here is no record evidence, or any allegations in the complaint, that any of the defendants in the [Amazon and Walmart] cases have promised to be bound by this case, much less to which aspects of this case the [Amazon and Walmart] defendants could be bound."  *Reply* [#34] at 12.  As Plaintiff points out, Defendant's position is no longer tenable.  *See Notice of Supplemental Authority* [#54] (citing *Walmart*, 2022 WL 2373714).  As stated by the Western District of Texas, "Walmart has agreed to be bound by the outcomes of the [declaratory judgment] Actions."  *Walmart*, 2022 WL 2373714, at *3 (finding that the customer suit exception applies to Walmart).  The Western District of Texas also suggests that Amazon has agreed to be bound by the present case.  *See id.* at *3 n.1 ("The Court's reasoning in this factor is distinguishable

---

[16]  Both Plaintiff and Defendant appear to agree that the *Pragmatus* factors apply to the present case.  *See Motion* [#16] at 16 (citing *Pragmatus*, 2012 WL 2803695, at *3); *Response* [#19] at 13 (same).

from . . . *Amazon.com, Inc.* because there, another defendant was in the case. . . .  In that case, there was no indication that the co-defendant agreed to be bound by the outcome of the declaratory judgment actions.").  Furthermore, Amazon recently made its agreement to be bound by the present case explicitly clear in a petition for writ of mandamus relating to the Amazon Suit.  *See* Petition for Writ of Mandamus, *In re Amazon.com*, No. 22-157 [#2] at 41 ("Amazon clearly stated that it would agree to be bound by the outcome of the Colorado actions.") (citation omitted); *Notice of Supplemental Information* [#59] at 1 (citing *id.*).

Defendant further argues that any agreement by Amazon to be bound by the present case cannot support the customer suit exception because Amazon is accused of indirect infringement, which requires a showing of individual defendants' states of mind. *Reply* [#34] at 12-13, 13 n.6 (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011)).  The Court notes that Defendant has also alleged that Amazon has committed direct infringement.  *See, e.g.*, *Pl.'s Ex. 5*, *Amazon Complaint*, [#1-5] ¶ 18 ("Amazon has directly infringed and continues to directly infringe . . . one or more claims, including at least claim 2 of the '024 Patent . . . .").  Direct infringement requires no analysis of a defendant's state of mind.  *Global-Tech*, 563 U.S. at 761 n.2 ("[A] direct infringer's knowledge or intent is irrelevant.").  Therefore, the Court finds that Amazon's agreement to be bound by the present case *is* relevant to the customer suit exception, and supports the exception's application.

Because both Amazon and Walmart have agreed to be bound by the present case, the Court finds that this factor weighs in favor of the application of the customer suit exception.

### 3.    Whether the Manufacturer Is the Sole Source of Infringing Products

Defendant argues that Plaintiff "is not the sole source of infringing products" because the Amazon and Walmart Suits collectively involve four other manufacturers as defendants.  *See Motion* [#16] at 16.[17]  Plaintiff counters that its declaratory judgment may be consolidated with that of PopSockets LLC,[18] that a third manufacturer involved in the Amazon and Walmart Suits is a Colorado company, and a fourth manufacturer is a licensee of a Colorado company.  *Response* [#19] at 14-15.

Plaintiff does not cite any legal authority for the proposition that the citizenship of other manufacturers is relevant to the question of whether Plaintiff is the sole source of allegedly infringing products.  *See id.*  The Court therefore rejects Plaintiff's argument because the third *Pragmatus* factor is a straightforward inquiry as to whether Plaintiff is the sole source of allegedly infringing products—here, Plaintiff is not the sole source because four other manufacturers are involved in the Amazon and the Walmart Suits. *See Pragmatus*, 2012 WL 2803695, at *3; *Motion* [#16] at 16.

Plaintiff further argues that by "lumping multiple manufacturers into single cases," Defendant has attempted to "thwart the intent of both [the customer suit] exception and the Declaratory Judgment Act."  *Response* [#19] at 15 (citing *Pragmatus*, 2012 WL 2803695, at *4).  The *Pragmatus* court stated that "[a]s the Federal Circuit noted in *Katz* . . . the manufacturer's case need only promise to resolve the 'major issues' concerning

---

[17]  Defendant further references a third case proceeding in the Western District of Texas.  *Motion* [#16] at 16 (citing *Flygrip, Inc. v. Five Below, Inc.*, No. 6:21-cv-1080 (W.D. Tex.)).  Because, as Defendant identifies, Plaintiff's products are not at issue in this third case, the Court declines to consider the third Texas case for the purposes of adjudicating the present Motion [#16].  *See id.*

[18]  PopSockets LLC is a Colorado company that has filed a declaratory judgment action against Defendant in this District.  *Response* [#19] at 14 (citing *Def.'s Ex. A*, *PopSockets Complaint* [#17-1]).

- 32 -

the claims against the customer, and not every conceivable issue."  2012 WL 2803695, at *4 (alteration in original) (quoting *Ultra Prods., Inc. v. Best Buy Co., Inc.*, No. 09-1095, 2009 WL 2843888, at *5 (D.N.J. Sept. 1, 2009) (citing *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990))).  In the present case, because there are four additional manufacturers involved in the Amazon and Walmart Suits, Plaintiff's declaratory judgment action is incapable of resolving the 'major issues' in dispute.  Defendant's infringement allegations against the other four manufacturers will remain as 'major issues' even if allegations made against Plaintiff's products are resolved.

Accordingly, the Court finds that this factor weighs against the application of the customer suit exception.

### 4.    Balancing the Factors

In sum, two of the three *Pragmatus* factors weigh in favor of the application of the customer suit exception.  *See* 2012 WL 2803695, at *3.[19]  Because the majority of the *Pragmatus* factors support the application of the customer suit exception, the Court finds that the first-to-file rule does not apply to the present case.  *See Teleconference Sys.*, 676 F. Supp. 2d at 327.  The Court thus turns to the forum-shopping exception to

---

[19]   The Court notes that while Defendant introduces the *Pragmatus* factors as factors to be collectively weighed, *see Motion* [#16] at 16, Defendant appears to later argue that the third factor, i.e., "whether the Manufacturer is the sole source of infringing products[,]" is controlling for the customer suit exception analysis, *see Reply* [#34] at 12 ("The customer suit exception *requires* that the 'manufacturer' needs to be the source of the products in the 'customer' litigation." (citing *Kahn*, 889 F.2d at 1081-82)) (emphasis added).  In *Kahn*, the Federal Circuit identified cases where the customer suit exception was properly applied despite the presence of multiple manufacturer defendants because of the customer defendants' agreement to be bound by separate litigation.  889 F.2d at 1082 (citing *Refac Int'l v. IBM*, 790 F.2d 79, 81 (Fed. Cir. 1986), *modified on rehearing*, 798 F.2d 459 (Fed. Cir. 1986); *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 180 (2d Cir. 1969)).  Therefore, the Court finds that the third *Pragmatus* factor does not carry any extra weight.

determine whether there are additional grounds against the application of the first-to-file rule.

## C.    The Forum-Shopping Exception

"[C]ourts need not defer to the first-filed case when doing so would reward forum shopping." *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1127 (10th Cir. 2018) (citation omitted).   The Supreme Court has described forum-shopping as a plaintiff's selection of a forum thought to be friendly without having relevant ties to the forum.   *See Ford*, 141 S. Ct. at 1031.   "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue" unless "there are significant connections between a particular venue and the events that gave rise to a suit[.]"   *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) (internal citations omitted).   For example, "[a] party who appropriately files a declaratory judgment action in the forum most convenient to him to resolve a ripe legal dispute is not engaged in forum shopping."   *Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505, 514-15 (S.D.N.Y. 2004).

In the present case, Plaintiff argues that Defendant "chose the Western District of Texas solely for forum shopping purposes" because no party involved in the Amazon and Walmart Suits is headquartered or incorporated in Texas, and the Amazon and Walmart Suits do not "arise from any alleged activity unique to Texas[.]"   *Response* [#19] at 15-16. While Defendant does not appear to make any explicit arguments denying its forum-shopping, the Court infers that Defendant denies such allegations.   *Cf. Motion* [#16] at 16 ("It is therefore in the interest of justice to transfer this case to the Western District of Texas."); *see generally Reply* [#34].

As to Plaintiff's arguments regarding the Amazon and Walmart Suits' parties' relations to Texas, the Court finds that Defendant concedes this point because Defendant makes no contrary arguments. *Cf. Rodriguez*, 8 F.4th at 1296; *see generally Reply* [#34].[20]   The Court further finds that the nationwide sales of products at issue in the Amazon and Walmart Suits are insufficient to provide a substantial connection to the Western District of Texas. *See Walmart*, 2022 WL 2373714, at *8 ("As it is uncontested that the accused products are sold by Walmart nationwide, this Court cannot consider the sales of the accused products in the WDTX or DCO.").  Because there is no local interest in the Western District of Texas, the Court finds that Defendant may have engaged in forum-shopping by filing the Amazon and Walmart Suits in the Western District of Texas.

Thus, because the customer suit exception applies, and Defendant *may* have engaged in forum-shopping, the Court finds that the first-to-file rule does not apply to the present case. *See Teleconference Sys.*, 676 F. Supp. 2d at 327.  Accordingly, the present case does not require a stay, dismissal, or transfer, and the Court **recommends** that the Motion [#16] be **denied** as it relates to the first-to-file rule. *See Futurewei Techs.*, 737 F.3d at 708.  The Court therefore turns to Defendant's remaining arguments relating to whether Plaintiff fails to state a claim.

### VI.  Whether Plaintiff Fails to State a Claim

### A.    Legal Framework

---

[20]  The Court declines to consider Defendant's recent re-incorporation in Texas. *See Walmart*, 2022 WL 2373714, at *8 ("[L]ittle or no weight should be accorded to a party's recent and ephemeral presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation. . . .  In this case, Flygrip re-incorporated in Texas after the filing of the original Motion to Transfer. . . .  Therefore, this Court cannot give weight to Flygrip's status as a Texas corporation in this analysis.") (internal quotations and citations omitted).

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted. . . .").  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Id.* (brackets in original; internal quotation marks omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that [a] defendant has acted unlawfully."  *Id.* (citation

omitted).  To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n] . . . that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a).  *Iqbal*, 556 U.S. at 679 (citation and internal quotation marks omitted).

## B.    Analysis

Defendant argues that Plaintiff's non-infringement allegations are conclusory because Plaintiff "uses the same vague allegations to seek a declaration on what appears to be every single product that [Plaintiff] offers[,]" thereby failing to provide proper notice to Defendant.  *Motion* [#16] at 20-21 (noting that Plaintiff's website lists over 1,200 products).[21]  Plaintiff, on the other hand, argues that the Complaint [#1] identifies specific products accused of infringement, a specific patent and claim that Plaintiff is accused of infringing, and allegations of Defendant's reference to each of the Patents-in-Suit. *Response* [#19] at 18.

---

[21]  The Court notes that Plaintiff disputes the relevancy of "1,200" product listings.  *See Response* [#19] at 19 ("[T]his is a highly misleading calculation, in part because every color or design option, for every corresponding phone model, has a different product listing on the website.").

The Court finds that the Complaint [#1] does include specific exemplary products accused of infringement. The Complaint [#1] and its attachments unquestionably identify the "Otter + Pop Symmetry Series, Otter + Pop Defender Series, [and] Otter + Pop Figura Series" as being accused by Defendant of infringing claim 2 of the '024 Patent. *See Compl.* [#1] ¶¶ 21-23, 41-42; *Pl.'s Ex. 10*, *Amazon Suit Claim Chart* [#1-10] (the "Amazon Claim Chart") at 3; *Pl.'s Ex. 12*, *Walmart Suit Claim Chart* [#1-12] (the "Walmart Claim Chart") at 3. While Defendant argues that Plaintiff's "claims for declaratory relief fail to identify or reference any particular product line or product whatsoever[,]" the Court makes the reasonable inference that Plaintiff's claims refer to the specific products described above. *See Iqbal*, 556 U.S. at 678; *Compl.* [#1] ¶¶ 54, 62, 70, 78 ("[Plaintiff] repeats and realleges each and every allegation contained in the preceding paragraph[s] as if fully set forth herein."). The Court therefore agrees with Plaintiff that the present case is sufficiently analogous to that of a recent noninfringement declaratory action considered by the District of Delaware involving a motion to dismiss pursuant to Rule 12(b)(6):

> The cases that Synkloud cites in support of its argument that a plaintiff cannot state a claim for declaratory judgment of non-infringement without specifying the particular products for which the plaintiff seeks such a declaration are distinguishable. . . . In *Xilinx, Inc. v. Invention Investment Fund I LP*, the deficient invalidity counts claimed only that the patents failed to comply with one or more of the requirements of the patent laws of the United States . . . . In *Winstron* [sic] *Corporation v. Phillip M. Adams & Associates, LLC*, the declaratory judgment complaint fail[ed] to identify any specific products. . . . In *PPS Data LLC v. Allscripts Healthcare Solutions*[,] *Inc.*, the rejected declaratory judgment complaint consisted of two paragraphs containing bald assertions, devoid of fact. . . .
>
> Microsoft has identified its cloud storage technology, and more specifically OneDrive as the product that is alleged to infringe the Asserted Patents. The threat of infringement that Microsoft perceives is due to SynKloud's litigation against HP, for which the claim charts that specifically refer to Microsoft's OneDrive product are attached in this action. This stands in

contrast to the vague and conclusory allegations found by the Court in *Xilinx*, *Winstron* [sic], *PPS Data*, and *Eidos*. . . .

Even if Microsoft is seeking a declaration regarding its 'cloud storage technology' more broadly, this would also be sufficient to state a claim where it has identified an exemplary accused product. . . . The claim charts attached to Microsoft's Complaint identify its non-exhaustive portfolio of cloud storage technology products in a manner sufficient to put SynKloud on notice of the products at issue in this case.

*Microsoft Corp. v. SynkLoud Techs., LLC*, 484 F. Supp. 3d 171, 187-88 (D. Del. 2020) (internal citations and quotation marks omitted).[22]

Here, as in *Microsoft*, the Complaint [#1] and its referenced attachments include exemplary products in support of a request for a declaration on a broader range of products. *See Compl.* [#1] ¶¶ 21-23, 41-42; *Pl.'s Ex. 10*, *Amazon Claim Chart* [#1-10] at 3; *Walmart Claim Chart* [#1-12] at 3. The Court is aware that such a declaration may be required to consider over 1,200 products, *see Motion* [#16] at 21, but does not find this to be a judicially unmanageable task given the minor variations between Plaintiff's product lines, *see Response* [#19] at 19 (explaining that "every color or design option . . . has a different product listing[,]" and that the "Otter + Pop Symmetry Series"—referred to in the

---

[22] The Court notes that *Microsoft* explicitly distinguishes every case cited by Defendant as positive authority in support of its arguments regarding Rule 12(b)(6). *See Motion* [#16] at 20-21 ("Courts have held that a declaratory judgment plaintiff cannot state a claim for a declaratory judgment of noninfringement without specifying the particular products for which the plaintiff seeks such a declaration.") (citing *Xilinx, Inc. v. Invention Inv. Fund I LP*, No. C 11-0671 SI, 2011 WL 3206686, at *6 (N.D. Cal. July 27, 2011); *Wistron Corp. v. Phillip M. Adams & Assocs., LLC*, No. C-10-4458 EMC, 2011 WL 1654466, at *12 (N.D. Cal. Apr. 28, 2011); *PPS Data, LLC v. Allscripts Healthcare Sols., Inc.*, No. 3:11-cv-273-37TEM, 2012 WL 243346, at *4 (M.D. Fla. Jan. 25, 2012)); *see generally Reply* [#34]. Because the Court finds *Microsoft* to be both analogous to the present case and persuasive, the Court declines to apply Defendant's cited authorities which are not controlling in this District. Furthermore, the Court rejects Defendant's argument that the Complaint [#1] lacks specific limitations of patents for exemplary products. *Reply* [#34] at 15. The *Microsoft* court did not require such pleadings, and the Court is not aware of any relevant authority imposing such a requirement. *See generally Microsoft*, 484 F. Supp. 171.

Amazon Claim Chart [#1-10] and Walmart Claim Chart [#1-12]—includes 155 listings due to such minor variations).

Therefore, the Court finds that Plaintiff's allegations are sufficient to provide effective notice to Defendant, and that Plaintiff states legally cognizable claims. Accordingly, the Court **recommends** that the Motion [#16] be **denied** as it relates to the legal sufficiency of Plaintiff's claims.

### VII.  Conclusion

Based on the foregoing,

The Court respectfully **RECOMMENDS** that the Motion [#16] be **DENIED**.

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: August 17, 2022

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge